PEOPLE *v.* GREEN.
SAME *v.* WALSH.
SAME *v.* BIRK.

1. CRIMINAL LAW—PREJUDICIAL REMARKS—PROSECUTING ATTORNEY—RECORD.

Remarks of special prosecuting attorney, in trial of legislators for conspiracy to corruptly influence the action of the legislature by bribery, derogatory of defense counsel in such a way as courts or juries pay little attention to *held,* harmless and not to require the setting aside of verdict of conviction in view of entire showing made upon the trial.

2. SAME—NEWSPAPER ARTICLES LINKING A DEFENDANT WITH AN-OTHER CRIME—EXAMINATION OF JURY—MISTRIAL.

Showing made as to publication of newspaper articles, linking at least one of the defendants with the murder of a State senator, during course of trial of legislators for conspiracy to corruptly influence the action of the legislature by bribery *held,* insufficient, under the circumstances, to have required court either to examine the jurors with respect thereto or to have declared a mistrial.

3. CONSPIRACY—BACKGROUND EVIDENCE—INSTRUCTIONS.

In prosecution of some members of the 1941 legislature for conspiracy to corruptly influence the action of the legislature by bribery, reception into evidence as to bribery during the 1939 session as background and setup prior to period involved but relating to the same measure pertaining to practice of naturopathy and same lobbyist, was not error, where court at time of reception limited jury's consideration and instructed jury that such evidence should be disregarded as to such defendants as were not members during the 1939 session.

4. SAME—PREVIOUS EXISTENCE.

In prosecution for a conspiracy to corruptly influence the action of the legislature by bribery, it is proper to show existence of

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am. Jur., Appeal and Error, § 1059.

conspiracy prior to time some of the defendants being prosecuted became parties thereto.

5. SAME—CORRUPTION OF LEGISLATURE.
   A conspiracy to corrupt the legislature of the State by bribery is an offense under the law of the State.

6. SAME—BRIBERY—HEARSAY TESTIMONY.
   In prosecution of legislators for conspiracy to corruptly influence the action of the legislature by bribery, admission of testimony as to talk between paid briber and his employer about the matters of the bribery and bearing on the question of existence of conspiracy was not reversible error.

7. SAME—OFFER TO INDORSE NAMES OF WITNESSES ON INFORMATION.
   In prosecution of other legislators for conspiracy to corruptly influence the action of the legislature by bribery, the mere offer to indorse names of two senators on information after such senators had been referred to in the cross-examination of one of the people's witnesses was not prejudicial error where there was no statement before the jury as to what the two senators were expected to testify to, there was no detailed discussion of the matter and the offer to indorse was not renewed.

8. SAME—SUFFICIENCY OF EVIDENCE.
   In prosecution of legislators for conspiracy to corruptly influence the action of the legislature by bribery, evidence was sufficient to support verdict finding each defendant guilty beyond a reasonable doubt.

Appeal from Ingham; Simpson (John), J., presiding. Submitted April 15, 1948. (Docket Nos. 65, 67, Calendar Nos. 43,077, 43,218.) Decided December 17, 1948. Rehearing denied February 28, 1949.

William Green, Edward J. Walsh and William C. Birk were convicted of conspiracy to corruptly influence the action of the legislature. Affirmed.

*George S. Fitzgerald* and *Paul B. Mayrand,* for appellants.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *H. H. Warner, Victor*

*C. Anderson* and *Daniel J. O'Hara,* Assistants Attorney General, and *Richard B. Foster,* Special Assistant Prosecuting Attorney, for the people.

REID, J. Defendants, members of the Michigan State legislature, were informed against for conspiring to corruptly influence the action of the legislature on proposed legislation during the session of 1941 providing regulations for the practice of naturopathy. Defendants were found guilty by a jury and appeal from the sentence pronounced pursuant to their conviction. Defendant Birk was a State senator and defendants Green and Walsh were members of the State house of representatives.

During the argument to the jury, defendant Green's attorney made a lengthy denunciation of the prosecution's principal witness Williams, among other things referring to him as "a phony," speaking of Williams' "hidden malice" toward defendant Green, and stating that Williams "bundled up" and went to Chicago "because he had spent the money of these naturopaths, and could not show any results for it." The special prosecutor seems to have been provoked by the severity of the attack on witness Williams and in his final argument in reply to defendant's argument, proceeded to relate an instance when a fellow practitioner, after obtaining a verdict of acquittal for a client, stated, "Kim, I fooled them [the jury] again." Defendant Green's attorney objected to the prosecutor's relation of that story, whereupon the prosecutor referred to defendant's objection as "another trick of the trade." Defendant's objection was not properly subject to being referred to as a trick. The court should have so ruled but instead simply said, "Go ahead." However, we consider this ruling not to be reversible error under the circumstances. Attorneys too often refer to each other's objections as insincere and made for some

concealed motive, a matter to which courts and juries ordinarily pay little attention.

Other remarks were made by the special prosecuting attorney derogatory to defense counsel, but such remarks and allusions were not of such a nature as to require us to set aside the verdict in view of the entire showing made upon the trial. See *People* v. *Fitzsimmons,* 320 Mich. 116.

Upon conclusion of prosecution's case, defendant Green's counsel (joined in by counsel for the other defendants) moved to declare a mistrial on the ground that during the trial articles of a nature prejudicial to the rights of defendants had appeared in the Detroit Free Press, Detroit News, Detroit Times and Lansing State Journal. Defendant's counsel offered exhibits for the purpose of the motion only showing the published articles complained of, and stated:

"My reason for doing that, if the court please, most of these stories contain the name of William Green, included in the story as being one of the defendants in one of the cases, and the case through the write-ups, that particular case, through these write-ups, was directly linked to the death of Mr. Hooper. If the jury or any one of the jurors has seen these articles, particularly if they have read them, I don't think there is anything the court can do, regardless of the court's fair mindedness and good faith, anything that the court can do to erase from the individual juror's minds, the prejudice that might be engendered by these particular articles.

"Now, in making these motions, I am not accusing anyone of bad faith, I realize the prosecution is not responsible for them, because the stories don't emanate from Mr. Sigler or Judge Carr or any one of the grand jury staff. It is just one of the circumstances that arises in a matter of this kind, arousing a great deal of public interest. The only reason for making the motion, further, is because the death of

Senator Hooper and the indictment of defendant in this cause, has aroused a great deal of public notice. In addition to that, if the court please, I would like to call the court's attention to another matter, in and of itself perhaps harmless, but I have here an article in the Ingham County News, which was circulated prior to this trial, and I think all of the jurors have said that they read the Ingham County News, in which Mr. Sigler gave an explanation of his reason for reindictment of some of these defendants. I have no fault to find with that article and didn't mention it up until now, but I think coupling that article up with all of these articles in here, if the jurors have it in mind, I don't see how they can give him a fair and impartial trial."

The court ruled as follows:

"Well, I don't believe that there is anything that calls for a new trial,—just simply matters in the newspapers, something that we have no control over, —something that occurs in every day life. I don't believe these defendants are tied in with any others under suspicion in the Hooper case. I cannot see where under the circumstances there is any ground for a mistrial.

"It is something, in the story, apparently, out of Detroit, and nothing that the prosecutor has any control over, or the court. It is just something that occurs in every day life.

"Motion is denied."

Defendants did not request the court to examine the jurors as to whether any of them had read the articles complained about. The record does not disclose whether the court had theretofore warned the jury against reading newspaper articles about the case during the trial. Apparently the court was confident that no such improper action had occurred. The showing was insufficient to require the court to

examine the jurors or to require the court to declare a mistrial.

The matters alleged in the information had to do with efforts to obtain enactment of legislation proposed in the session of the legislature in 1941. Testimony was introduced against defendants' objection concerning similar legislation proposed in the session of 1939 and error is alleged because of the reception of such testimony. The same proposition was advanced in 1939 that was put forward in 1941, that is, a bill to permit and regulate the practice of naturopathy. The same lobbyist Williams was active with bribes in 1939; whatever ground he had gained in 1939 was counted on to keep his work going among his acquired supporters so far as re-elected in 1941; the same influences active in 1939 were being continued after the adjournment in 1939. In brief, the prosecution produced testimony to show that the conspiracy formed in 1939 continued and was joined in by the defendants. For their becoming a part of that conspiracy, the defendants were put on trial and convicted in the case at bar. The failure of the efforts of the proponents of the proposed legislation in 1939 merely led to repetition of their efforts to the same end in 1941. The charge of the court not being in the record, we are uninformed as to what the court therein instructed the jury if anything as to the use the jury might make of the testimony as to bribery in 1939 in which some of the defendants in this case (Green and Birk) are not shown to have (in 1939) participated, not being members of the legislature in 1939. However, the court in substance instructed the jury at the time of admitting the testimony that the testimony as to bribery in 1939 was only admitted to show the background and setup prior to 1940, and that if any of the defendants were not shown to be connected with the matters in 1939, the jury should disregard such testimony as to such

defendants. We consider that it was competent for the prosecution to show that the conspiracy counted on had existed prior to defendants' making themselves parties to it, and consider that no error was committed in that particular.

The nature of the conspiracy in this case, with its various ramifications, illustrates the necessity for the rule laid down by us in *People* v. *DeLano*, 318 Mich. 557, that conspiracy to corrupt the legislature of the State by bribery is an offense under the law of this State.* Defendants' claim in the case at bar that such conspiracy is not indictable as an offense was disposed of by us in the *DeLano Case, supra.*

Defendant Green now complains of testimony of Dr. McDonald as hearsay, the testimony in part being as follows:

"*Q.* And when Harry Williams first arrived here on the scene as the lobbyist for your group, was it the intention that he should bribe anyone?

"*Mr. Fitzgerald:* Just a moment, if the court please. I want to object to any testimony relating to the 1939 session on behalf of Mr. Green, even though it may be offered by way of explanation.

"*Mr. Sigler:* I understand that that objection is already on the record, Mr. Fitzgerald.

"*The Court:* Of course, this testimony, jurors, is by way of background only, to show the setup prior to 1941.

"Now, if it has no bearing as to Mr. Green, why, of course, you will ignore it.

"If it affects other defendants in the case, you will give it such weight as you think it is entitled to.

"*Q.* Going now to the session of 1939, after Mr. Williams had been here a short period of time, he reports to you and other members of the board of directors that he should not introduce the bill, and

---

\* See Act No. 328, § 505, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-505, Stat. Ann. § 28.773).—Reporter.

could get no where unless he paid certain legislators money?

"*Mr. Watzel:* I am going to object to that as purely hearsay.

"*The Court:* It may come in solely for background, and nothing else.

"*Mr. Fitzgerald:* May I also object?

"*The Court:* It may apply to all defendants.

"*Mr. Fitzgerald:* I was going to just remark, if the court please, that I don't believe this is to be taken as a statement of coconspirators, made during the progress of the conspiracy.

"*The Court:* Well, go ahead.

"*Q.* And were you informed of the fact that he had paid Senator Henry F. Shea $500 to introduce the bill?

"*A.* I was informed of the fact that he paid him money, but as to the exact amount, I could not state.

"*Q.* And Senator Chester M. Howell, who was the chairman of the public health committee in which the bill was being considered?

"*Mr. Fitzgerald:* Pardon me. It is understood that my objection continued? I don't want to be interrupting.

"*The Court:* That is correct.

"*Q.* And that it was necessary for him to pay certain other legislators?

"*A.* I understood that from him, yes, sir.

"I was familiar with the proceedings, in a general sort of way that took place during this period of 1939.

"The bill failed to pass."

It will be noted that the talk between Williams and McDonald was between paid briber and his employer about matters of the bribery and would bear on the question of existence of conspiracy.

Defendants claim as prejudicial the offer by the prosecution to indorse on the information the names of Senators Shea and Howell. During the cross-examination of people's witness McDonald by Mr.

Fitzgerald, attorney for defendant Green, the following occurred:

"*Q.* You said a moment ago there were honorable men in the legislature. Were they told Henry Shea was being paid money?
"*A.* No."

The special prosecuting attorney during his redirect examination of the same witness offered to indorse the names of Senators Shea and Howell, in view of the examination by Mr. Fitzgerald. No objection was made to the offer at the time, nor any suggestion that the court give the jury any instructions to disregard the offer. There was no statement before the jury as to what the two men, Shea and Howell, were expected to testify to. We are not convinced that the defendants were prejudiced by the offer. There was no detailed discussion of the matter and the offer to indorse was not renewed.

Defendants claim the verdict is against the weight of the evidence. Defendant Birk took the stand and denied his guilt, but as to defendant Birk the testimony of people's principal witness, Williams, is to an important extent corroborated by the testimony of other witnesses and Birk's own admission that Williams assumed defendant Birk's hotel bill. It is noted also that defendant Green introduced in the legislature Williams' proposed legislation.

After a careful consideration of the whole record, we find the verdict as to each defendant well supported by the testimony and that the testimony is sufficient to sustain the verdict finding the defendants guilty beyond a reasonable doubt. The convictions and judgments are affirmed.

BUSHNELL, C. J., and SHARPE, BOYLES, and NORTH, JJ., concurred with REID, J. BUTZEL, J., concurred in the result. DETHMERS and CARR, JJ., did not sit.