CHIEF JUSTICE RICE
delivered the Opinion of the Court.
¶1 This case requires us to determine whether a trial court abused its discretion by refusing to poll the jury about whether jurors had seen a prejudicial news report that had aired the night before and been posted online. Because the trial court gave repeated, specific admonitions—including on the day of the newscast—to jurors to avoid “newscasts” and “newspaper sites,” and these were the only places on which the prejudicial report was available, we hold that the trial court did not abuse its discretion when it refused to poll jurors. Therefore, we reverse the court of appeals and affirm the defendant’s conviction.
I. Facts and Procedural History
¶2 A jury convicted the defendant, Sandra L. Jacobson, of vehicular homicide, driving under the influence, and other related charges arising from a collision between her truck and a taxi cab. The collision killed two of the passengers in the taxi.
*550 ¶3 During the jury selection process, a prospective juror asked the trial court why the jury has to avoid media coverage of the trial, and the trial court explained:
There have been jury verdicts in death penalty cases in Colorado reversed because jurors did their own research and brought things into the jury room. All around the country it is becoming a greater and growing problem of jurors who seem to not understand that no communication means no communication when you are on a jury.
I realize that is hard to deal with in an era whei'e we have got so much electronic availability literally at our fingers. Remember what I said earlier, you have to base your verdict only on the evidence that you hear in the courtroom in this case. And that means you can’t get information that might impact that from any other source. If that means that for seven days or so you don’t read the Denver Post, you don’t look at a newspaper, you don’t go on the Internet to see what’s going on, that’s what it means. And I realize it is hard and it may sound stupid, but it is the essence of one part of what we are doing here which is to guarantee a fair trial. And that any decision the jury makes here be made only on the basis of the evidence that comes in at this—in this trial in this courtroom.
¶4 On the first day of trial, the trial court admonished the jury to avoid media coverage of the trial:
You must not read, view, or listen to any reports about this case in the press or on radio, television, or any other media. And in this day and age, that includes things like Faeebook, Twitter, text messages, blogging, and so forth. If you’re watching the news and you see something coming on about the Jacobson case, turn the television off. If you’re reading the newspaper, don’t read any articles about this case.
Throughout the trial, the trial court reminded the jury daily of the need to avoid all coverage involving Jacobson or the case.
¶5 During the trial, while the prosecution was presenting its case, the trial court was notified that a local news channel would be running a segment about the case and posting a story about the case online. The trial court, having previously admonished the jury to avoid news coverage of the case, gave a more specific admonition that day:
I want to suggest to you—you know, I’ve been giving you this admonition every night when you leave, but I want to sort of—I’m going to emphasize it again tonight. We are rapidly approaching the end of the People’s evidence. I cannot be sure when it’s going to be over but I think we’re getting close to that. It’s vitally important, as we move toward the end of this trial, that you remember the admonition that I gave you: No TV; no Internet; no radio. I know you may feel like you’re living on another planet but if you’re going to do any of those things, avoid newscasts, avoid newspaper sites.
There’s plenty to watch on television and plenty to see on the Internet and plenty to listen to on the radio that doesn’t involve news. Please avoid those things, as we have discussed.
(Emphasis added). In response to the admonition, several jurors nodded their heads affirmatively with serious looks on their faces. The next morning, the trial court and defense counsel discussed the newscast, which had mentioned several prejudicial aspects of the case not presented to the jury, including references to Jacobson’s past driving under the influence convictions and traffic accidents.
¶6 Defense counsel suggested that the court poll the jury about whether any jurors had seen the newscast or online article. However, the trial court declined to do so, noting (1) its specific, previous admonitions; (2) the jurors’ affirmative responses and serious demeanor in response to those admonitions; and (3) that polling the jury about a specific newscast now would be like “dangling a cookie under a two-year old’s nose.” Twice later that day—before lunch and at the end of the day—the court again admonished the jury to avoid media of any type.
¶7 On appeal, the court of appeals reversed Jacobson’s convictions and held that, under Harper v. People, 817 P.2d 77 (Colo. 1991), a new trial was required because the trial court *551 abused its discretion by declining to poll the jury about whether any jurors had seen or read a prejudicial news report that a local news channel had aired—and posted online— the night before. People v. Jacobson, 2014 COA 149, ¶¶ 2, 30, — P.3d -. The prosecution sought certiorari from this court, which we granted.[1]
¶8 After hearing arguments from both parties, we hold that it could not reasonably be believed that the news reports came to the jury’s attention. Because we disagree with the court of appeals’ conclusion, we now reverse the court of appeals and affirm Jacobson’s convictions.
II. Analysis
¶9 Trial courts have “broad discretion in deciding the ultimate issue of whether the media reports prejudiced the defendant’s right to a fair trial.” Harper, 817 P.2d at 83-84. Therefore, we review the trial court’s decision not to poll the jury for an abuse of discretion.
¶10 In Harper, this court laid out a three-step process for trial courts to follow when a prejudicial news report comes out during the course of a trial. Id at 83. First, the trial court should determine whether the coverage is actually prejudicial and contains inadmissible evidence. Id Second, if the report could prejudice the jury, the court should canvass the jury to learn if any of them learned of any impermissible information. Id. Finally, if any jurors admit to learning of outside information, the court should question them outside the presence of other jurors to learn what effect the prejudicial information had on the juror. Id The issue in this case focuses on the first prong.
¶11 On the first prong, when determining whether a report may have prejudiced the jury, courts should consider five relevant factors: (1) whether the report contained inadmissible, prejudicial information; (2) how closely related the report is to the matters in the trial; (3) the timing of the report; (4) the likelihood the jury was exposed to it; and (5) the likely effectiveness of any instruction not to read, watch, or listen to reports “in light of the nature and manner of dissemination of the news reports.” Id. at 84. We also held that “[t]he existence of admonitions, alone, does not sufficiently neutralize news reports in the community where the trial is being held that may reasonably be believed to have come to the attention of the jurors.” Id. (emphasis added).
¶12 The court in Harper took issue with the common presumption that jurors follow a trial court’s instruction, reasoning that the presumption was not applicable in a jury exposure situation because prejudicial information “could have come to the attention of a juror inadvertently.” Id. at 82. However, this is true only where it may “reasonably be believed” that the report came to the jury’s attention. Id. at 84
¶13 Here, the news report contained prejudicial information relevant to the trial and was broadcast during the trial. However, those factors are outweighed by the low likelihood that any jurors were exposed to the reports. The reports had very limited distribution—they were available only during one channel’s evening newscast and on that channel’s website, both of which the trial court specifically warned jurors to avoid on that day (“avoid newscasts, avoid newspaper sites”). The trial court gave repetitive, daily, and specific admonitions not to seek out news on the television or the internet. With repetitive, specific admonitions and a limited distribution, there was no reasonable likelihood that the jurors had been exposed to the prejudicial news reports. Further, as the trial court noted, additional questions about specific news reports may have been counterproductive—i.e., that by mentioning the reports it may have encouraged jurors to seek them out. Therefore, the trial court did not abuse its discretion when it refused to poll the jury the day after the news report had aired.
*552 III. Conclusion
¶14 The trial court did not abuse its discretion when it declined to poll the jury on the day following a prejudicial news report. Therefore, we reverse the court of appeals and affirm Jacobson’s convictions.
JUSTICE HOOD dissents, and JUSTICE MÁRQUEZ and JUSTICE GABRIEL join in the dissent.

. We granted certiorari on the following issue:
Whether the court of appeals erred by misinterpreting Harper v. People, 817 P.2d 77 (Colo. 1991) and holding that admonitions alone may never be sufficient to neutralize the potential for unfair prejudice and requiring trial courts to poll jurors any.time a media report is broadcast mid-trial.