22CA1444 Peo v Freyta-Duran 03-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1444
City and County of Denver District Court No. 21CR4693
Honorable Brian R. Whitney, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Carla D. Freyta-Duran,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Sullivan and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 20, 2025

---

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Claire Pakis, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Carla D. Freyta-Duran, appeals her convictions of one count of first degree criminal trespass (of a dwelling) and two counts of third degree assault.  She contends that the trial court permitted improper testimony from a police officer, erroneously admitted other acts evidence, and plainly erred in permitting prosecutorial misconduct in closing argument.  We disagree and affirm.

I.    Background

¶ 2     Freyta-Duran and Joseph Maynes were in a relationship for nearly eight years and broke up approximately eight months before the incident in January 2021.  During their time together, Freyta-Duran and Maynes lived at his home, where they co-parented their similarly aged children.  After the break-up, Maynes began seeing Regina Deleon.  Deleon eventually moved into Maynes' residence.  Maynes also shared the home with his adult son and a roommate.

¶ 3     The night before the incident, Maynes' son spent the night at Freyta-Duran's home.  Freyta-Duran believed that Maynes' son stole money from her son's room before he left.  The next day, Freyta-Duran and her cousin went to Maynes' home to confront his

son and retrieve the missing money. She claimed that Maynes' roommate let her inside the home.

¶ 4    Upon entering the home, Freyta-Duran went directly to Maynes' bedroom, kicked open the door, and yelled about the missing money. Maynes and Deleon were asleep, and Maynes' son and roommate were elsewhere in the house. When Freyta-Duran saw Maynes in bed with Deleon, she "lost control." As Deleon dialed 911, Freyta-Duran knocked over and threw items around the room and hit both Maynes and Deleon. Maynes pushed Freyta-Duran off of them and attempted to remove her from his room. Maynes' son and roommate then escorted Freyta-Duran out of the house. Freyta-Duran was gone by the time the police arrived.

¶ 5    The State charged Freyta-Duran with second degree burglary of a dwelling and two counts of third degree assault as acts of domestic violence. A jury convicted her of the lesser offense of first degree criminal trespass, and both counts of third degree assault. The trial court also found the trespass and the assault convictions naming Maynes were acts of domestic violence.

## II.    Officer Testimony

¶ 6    Freyta-Duran contends that the trial court erroneously admitted an investigating officer's testimony describing the condition of Maynes' bedroom as being consistent with Maynes' and Deleon's descriptions of what occurred. She alleges that this improperly bolstered their testimony, usurped the jury's factfinding function, and provided an improper legal opinion. We disagree.

### A.    Additional Facts

¶ 7    Officer Monet Jackson responded to the 911 call placed by Deleon. The following colloquy occurred during the officer's direct examination.

> [Prosecutor:] In addition to speaking with Mr. Maynes and Ms. Deleon, did you conduct any other investigation on scene?
>
> [Officer:] Yes.
>
> [Prosecutor:] What investigation did you conduct?
>
> [Officer:] Basically, looking at the scene, seeing if the scene tells us anything. I observed multiple items that appeared to have been thrown around the bedroom, which was consistent with her coming into the residence without Mr. Maynes' knowledge or permission, entering the bedroom while he was sleeping, slapping him twice on the right side of his face as well as his girlfriend.

3

¶ 8    Defense counsel objected and argued that the response amounted to bolstering and went to "the ultimate issue the jury must decide." The trial court overruled the objection, finding that it "was basically a description of the physical things that [the Officer] saw."

### B.    Standard of Review and Applicable Law

¶ 9    We review a court's evidentiary ruling for an abuse of discretion. *People v. Miller*, 2024 COA 66, ¶ 40. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 10    The parties agree that Freyta-Duran preserved her bolstering and ultimate issue arguments, but the People assert that she did not preserve her legal opinion argument. We agree and review that contention for plain error. *People v. Arzabala*, 2012 COA 99, ¶ 83. An error is plain if it is obvious and substantial, and so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Hagos v. People*, 2012 CO 63, ¶ 14. We review the preserved issues for harmless error. *Id.* at ¶ 12. An error is harmless if, when viewed in light of the entire trial record, it did not substantially influence the verdict or affect the

4

fairness of the trial proceedings. *People v. Delsordo*, 2014 COA 174, ¶ 7.

¶ 11 CRE 701 governs the admission of lay witness testimony and provides that such testimony is proper if it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

¶ 12 A prosecutor improperly bolsters a witness' testimony by implying that the testimony is truthful, thereby invading the province of the fact finder. *Venalonzo v. People*, 2017 CO 9, ¶ 32.

¶ 13 Moreover, a testifying witness may not usurp the jury's factfinding role. *People v. Robles-Sierra*, 2018 COA 28, ¶ 24. CRE 704 provides that opinion testimony that is "otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." In determining whether witness testimony usurped the jury's function, courts consider whether (1) the witness opined that the defendant committed or likely committed the crime; (2) the testimony was clarified on cross-examination; (3) the expert's testimony usurped the trial court's

function by expressing an opinion on the applicable law or legal standard; and (4) the jury was properly instructed on the law and that it could accept or reject the witness' opinion. *People v. Rector*, 248 P.3d 1196, 1203 (Colo. 2011). Further, while a witness cannot testify concerning his belief that the defendant committed the charged crime, "police officers may testify about the reasons they took certain investigative steps, even where this testimony touches upon prohibited subjects." *People v. Penn*, 2016 CO 32, ¶¶ 31-32.

## C. Analysis

¶ 14 We first reject Freyta-Duran's assertion that the officer's testimony improperly bolstered Maynes' and Deleon's testimony. Instead, we agree with the trial court that the officer described her investigative steps. *See Penn*, ¶¶ 31-32. The officer described interviewing Maynes and Deleon and then investigating the scene to see what additional information it could provide. Based on her observations of the bedroom's appearance, she concluded it was consistent with what the witnesses described. *See id.*; *see also Vigil v. People*, 2019 CO 105, ¶¶ 26-29 (officer permissibly opined, based on firsthand observations as a lay witness, that shoeprints at the crime scene visually matched the defendant's shoes); *People v.*

*Brewer*, 720 P.2d 583, 587-88 (Colo. App. 1985) (the officer permissibly opined, based on his interrogation of the defendant, that the defendant's actions were voluntary). Moreover, we reject Freyta-Duran's assertion that the officer's use of the phrase "consistent with" constitutes an impermissible opinion on the truthfulness of Maynes' and Deleon's statements. As used here, its purpose was to describe the continuing investigation and not to opine on credibility. *Id.* Indeed, the officer never used the word truth or stated any belief that the witnesses were telling the truth.

¶ 15     For the same reasons, we conclude that the officer's testimony did not express an opinion regarding whether the applicable legal standard was satisfied or otherwise usurp the jury's factfinding role. Indeed, she never mentioned the elements of the offenses charged or tied them to her observations, so we fail to see how any error was obvious. And the officer's use of "consistent with" did not invade the province of the jury since she never said that Freyta-Duran actually committed the elements of the charged offenses. *See People v. Atencio,* 140 P.3d 73, 76 (Colo. App. 2005) (officer's testimony that the amount of drugs seized was "consistent with an

intent to distribute" did not invade jury's province because he never said that the defendant actually possessed that intent).

¶ 16　　To the extent Freyta-Duran claims the officer's testimony was "speculative" because the officer did not personally observe the events in the bedroom, we reject that claim and conclude that the officer's statement about Freyta-Duran's state of mind, while perhaps inartful, constitutes a reasonable inference from her observations and the witness interviews she conducted. *Brewer*, 720 P.2d at 587-88. Moreover, the testimony, when viewed in context, did not so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. The prosecutor admitted photos of the scene, so the jurors had an independent basis from which to decide whether the physical evidence was consistent with Maynes' account.

¶ 17　　Finally, even assuming the testimony should have been excluded, we conclude its admission was harmless. The officer's statements were brief, constituted a small part of her entire testimony, and constituted an even smaller part of the trial. *People v. Mendenhall*, 2015 COA 107M, ¶ 69 (concluding that the screening testimony was harmless because it was brief and

constituted a small part of the witness' entire testimony). Moreover, the prosecutor did not argue the statements as evidence of Freyta-Duran's guilt in closing argument. Additionally, Freyta-Duran testified, so the jury was able to independently assess the credibility of all the participants. *See Davis v. People*, 2013 CO 57, ¶ 21 (finding no error in the admission of the detective's credibility assessments during the interviews because the witnesses testified at trial, so the jury had ample opportunity to independently judge their credibility). Further, the court instructed the jury that it should consider police officers' testimony as it would any other witness, and absent contrary evidence, we presume the jury understood and followed this instruction. *See Washington v. People*, 2024 CO 26, ¶ 31. Finally, the jury's acquittal on the most serious charge demonstrates that it was not improperly influenced by the officer's testimony. *See People v. Larsen*, 2017 CO 29, ¶ 16 (a split verdict is an indication the outcome was not affected by prejudice).

¶ 18 Accordingly, we discern no abuse of discretion in the admission of this evidence.

## III. Other Acts Evidence

¶ 19 Freyta-Duran next contends that the admission of evidence about her attempts to "damage the cars" outside of Maynes' house when leaving constitutes inadmissible CRE 404(b) evidence that requires reversal. We decline to address this issue because we conclude Freyta-Duran invited any error.

¶ 20 "The doctrine of invited error prevents a party from complaining on appeal of an error that he or she has invited or injected into the case; the party must abide the consequences of his or her acts." *People v. Rediger*, 2018 CO 32, ¶ 34. The invited error doctrine applies to errors implicating constitutional rights. *See Horton v. Suthers*, 43 P.3d 611, 619 (Colo. 2002); *see also Montoya v. People*, 2017 CO 40, ¶ 35 (noting that "the constitutional requirement that the prosecution prove the elements of a crime beyond a reasonable doubt" does not foreclose a defendant's loss of the right to demand such proof because of the defendant's own conduct). But it only applies to a narrow range of cases in which the error results from trial strategy and not mere oversight. *Rediger*, ¶ 34.

¶ 21    During Maynes' direct examination, the prosecutor elicited his account of the altercation inside the house and that he and his son escorted Freyta-Duran out of the house. The prosecutor asked no questions about what occurred outside the house. On cross-examination, the following colloquy occurred:

> [Defense counsel]: After [your son] came up to the room – came into the room, it's you, Matthew, Ms. Deleon, [defendant] and [defendant's cousin] all in your house.
>
> [Maynes]: Yes.
>
> [Defense counsel]: Then [defendant] left the house.
>
> [Maynes]: She -- we forced her out of the house.
>
> [Defense counsel]: Okay. She left in her own car.
>
> [Maynes]: Yeah.
>
> [Defense counsel]: She was not there -- she was not there when the police arrived.
>
> [Maynes]: No. I mean, there was also a big commotion out in the front as well before she left.
>
> She --
>
> [Defense counsel]: Okay.

11

[Maynes]: -- I had -- there was some big rocks I had for landscaping. She attempted to pick those up and break Regina's windshield. My roommate stopped her from doing that.

[Defense counsel]: Okay. And let's talk a little bit at that. Mr. Maynes, you just told the jury that Ms. Freyta-Duran attempted to smash your windshield; right?

[Maynes]: Regina's windshield.

[Defense counsel]: Okay. Remember writing the statement with the officers?

[Maynes]: Yeah.

[Defense counsel]: And remember signing your name saying it was a true statement?

[Maynes]: Mm-hmm, yes.

[Defense counsel]: Nowhere in that statement do you say that Regina tried to smash the windshield.

[Maynes]: I - - well, she did –

[Defense counsel]: -- or that Ms. Duran tried to smash the windshield.

[Maynes]: Right.

¶ 22    The decisions concerning what witnesses to call and what questions to ask are matters of trial strategy. *See Davis v. People*, 871 P.2d 769, 773 (Colo. 1994). While Maynes initially provided a nonresponsive answer to defense counsel's question about Freyta-

12

Duran's absence when the police arrived, counsel never moved to strike that answer and instead highlighted it by impeaching Maynes with its omission from his written statement. We therefore conclude that the admission of this evidence resulted from counsel's strategic decision to use this nonresponse for impeachment purposes and not from mere oversight. Because Freyta-Duran invited the error that she now asks us to correct, we decline to address her contention because she must abide the consequences of her acts. *See Rediger*, ¶ 34.

## IV. Prosecutorial Misconduct

¶ 23 Freyta-Duran next contends that pervasive prosecutorial misconduct rendered her trial fundamentally unfair and requires reversal. She alleges the prosecutor improperly argued credibility, misstated the facts, trivialized the burden of proof, and "barred" the jury from considering certain evidence. We are not persuaded.

### A. Standard of Review and Applicable Law

¶ 24 "Whether a prosecutor's statements constitute misconduct is generally a matter left to the trial court's discretion." *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). We will not disturb the trial court's rulings regarding such statements absent

an abuse of that discretion.  *People v. Strock*, 252 P.3d 1148, 1152 (Colo. App. 2010).

¶ 25    Freyta-Duran's claims of prosecutorial misconduct are unpreserved, limiting our review to plain error.  *See People v. Leyba*, 2019 COA 144, ¶ 55, *aff'd*, 2021 CO 54.  Reversal under this standard requires that the misconduct be obvious and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.  *People v. Walker*, 2022 COA 15, ¶ 28.  To constitute plain error, the misconduct must be flagrant or glaring or tremendously improper. *People v. Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004), *aff'd*, 119 P.3d 1073 (Colo. 2005).

¶ 26    When reviewing claims of prosecutorial misconduct, we conduct a two-step analysis.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).  First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances.  *Id.* Second, if the comments were improper, we evaluate whether they warrant reversal according to the proper standard of review.  *Id.*

¶ 27    In conducting this analysis, we consider the prosecutor's alleged error in the context of the argument as a whole and in light

of the evidence before the jury. *People v. Samson*, 2012 COA 167,

¶ 30. A prosecutor is permitted to comment on the admitted

evidence and the reasonable inferences that can be drawn from the

evidence, employ rhetorical devices, and engage in oratorical

embellishment and metaphorical nuance. *Id.* at ¶ 31. And because

arguments delivered in the heat of trial are not always perfectly

scripted, we give the prosecutor the benefit of the doubt when their

remarks are ambiguous or simply inartful. *Id.* at ¶ 30. However,

closing arguments cannot be used to mislead or unduly influence

the jury. *Domingo-Gomez*, 125 P.3d at 1049. A prosecutor may not,

for example, intentionally misstate the evidence, attempt to inflame

the jurors' passions, or offer a personal opinion as to the

defendant's guilt. *See id.*

### B. Analysis

#### 1. Credibility

¶ 28     The trial evidence revealed conflicting accounts of what

occurred in Maynes' home. After summarizing the evidence and

discussing the jury instructions, the prosecutor focused on

credibility and argued that the jury should credit Maynes' and

Deleon's testimony because they were consistent with each other

and were corroborated by the physical evidence and the officers' observations. She then argued that Freyta-Duran's testimony did not make sense and noted that Freyta-Duran's claim that she went to the house to speak with Maynes' son was inconsistent with her going directly to Maynes' bedroom and kicking in the door. She also argued the implausibility of Freyta-Duran's expectation that Maynes' adult son would be sharing a bedroom with his father. When discussing credibility, the prosecutor made the following statement, challenged here:

> Where her story falls apart is how she can't stick to a single thread and backtracked every time she was confronted with the illogical nature of her story. Because there's what it was: A story. It was not evidence -- or it wasn't the truth, it wasn't the evidence. They weren't facts.

¶ 29 The prosecutor then rhetorically asked, "[I]f she really was going there to see [his son], why did she take that hard right to kick open that door?" The prosecutor then posited that Freyta-Duran's plan to confront Maynes' son was "an excuse to get revenge."

¶ 30 Defense counsel responded by arguing that "[s]he told you the truth," and that Maynes' and Deleon's versions did not make sense. In rebuttal, the prosecution challenged the argument that Freyta-

16

Duran's testimony was credible, pointing to its "illogic" and inconsistencies. She noted that the prosecution witnesses had "nothing to gain" by testifying as they did, while Freyta-Duran did "have a motive to change her story, to tweak her story, to make it seem different from what occurred, to downplay what she actually did."

¶ 31     We discern no misconduct in the prosecutor's argument, for four reasons. First, the jury was tasked with deciding the facts based largely on the credibility of the witnesses present in the bedroom, so comparisons of the witnesses' versions of what occurred were proper. *See Domingo-Gomez*, 125 P.3d at 1050 (a prosecutor may ask the jury not to believe a witness but should not call the witness a liar). We conclude the prosecutor's rebuttal was a proper response to defense counsel's argument that Freyta-Duran was telling the truth and was anchored in the instruction telling the jury it should assess each witness' motive for testifying when considering credibility. *See People v. Nardine*, 2016 COA 85, ¶ 53 (comment on credibility proper when tied to credibility instruction and argument encouraged jury to consider whether testimony was corroborated by other evidence).

¶ 32    Second, the prosecutor never called Freyta-Duran a "liar" or used the word "lie" in her argument. *Id.* While we acknowledge that she argued Freyta-Duran's statement was not the truth (a form of the word lie), the record shows that she recognized her mistake and immediately corrected it by saying it was not factual. *People v. Nerud*, 2015 COA 27, ¶¶ 53-55 (prosecutor's argument that two witnesses were credible not improper when drawn from the evidence). Although the remark was susceptible to being considered a personal opinion, it was neither inflammatory nor intended to evoke a strong emotional response, so we view it as unintentional and inartful. *See Domingo-Gomez*, 125 P.3d at 1051-52 (use of phrase "did not tell you the truth," though inartful and susceptible to being considered a personal opinion, was not improper).

¶ 33    Third, when considered in the context of the complete argument, we discern nothing that would suggest the prosecutor expressed a personal opinion of Freyta-Duran's credibility. Instead, the record shows that she argued the consistencies between the physical evidence and her witnesses' statements, and the inconsistencies in Freyta-Duran's statements. Where the jury's

18

decision rested on credibility determinations, we see no other way to argue the case effectively. *See People v. Wallace*, 97 P.3d 262, 270-71 (Colo. App. 2004) (where case turned on which witnesses to believe, each counsel was entitled to argue their witnesses were more credible than the other side's witnesses); *see also Domingo-Gomez,* 125 P.3d at 1051 (courts should consider language used, context of statement, and other relevant factors to determine whether comment improperly expresses a personal opinion of credibility).

¶ 34     Finally, we are not convinced that the remark saying Freyta-Duran's statement was not evidence, somehow precluded the jury from considering it. This assertion is contradicted by the trial court's instruction stating that the witness testimony was evidence and its reminder to the jury that the arguments of counsel are *not* evidence.

## 2.     Misstatement of Fact

¶ 35     We conclude that the prosecutor's misstatement of fact was not intentional and thus forms no basis for reversal. While a prosecutor may not misstate the facts, such conduct rises to the level of misconduct only when it is intentional and when the

19

prosecutor intends to mislead the jury as to the inferences it may draw from the evidence. *Domingo-Gomez*, 125 P.3d at 1049.

¶ 36 Here, the prosecutor argued that "when [Freyta-Duran] kicked him repeatedly, . . . she used an act of violence on him and she had been in a relationship. So it's domestic violence." Maynes testified that Freyta-Duran slapped him with her hands and used her feet to kick open the door and kick over the fan, so we agree that a misstatement of fact occurred. Nevertheless, we view this as a verbal slip that did not affect the outcome of the case. Indeed, arguments delivered in the heat of trial are not always perfectly scripted. *Samson*, ¶ 30. Whether Freyta-Duran used her hands or feet to assault Maynes has no bearing on whether the assault was an act of domestic violence. Moreover, Freyta-Duran has not explained, nor can we see, how this mistake misled the jury in deciding whether the assault was an act of domestic violence. And the fact that it drew no objection from defense counsel in the moment supports our conclusion that it was not intentional. *See Wend*, 235 P.3d at 1097 (absence of objection indicates remark not overly damaging).

### 3.    Burden of Proof

¶ 37    When explaining the reasonable doubt instruction, the prosecutor stated that "beyond a reasonable doubt . . . breaks down to what is and what ifs." She described the "what is" as the concrete facts and the "what ifs" as vague questions and speculations. She then explained that questions like "what if this happened" were speculative and not reasonable doubt. As best we understand Freyta-Duran's argument, she asserts that these remarks precluded the jury from considering evidence for which there was no explanation (like how the pill bottle was overturned) and that they constituted a misstatement of the law. We disagree because the trial court properly instructed the jury on its role to assess witness credibility, its prerogative to accept or reject any testimony, the presumption of innocence, the definition of reasonable doubt, and the fact that the prosecutor's argument was not evidence. *People v. Duncan*, 2023 COA 122, ¶ 39 (finding prosecutor's statements about "what ifs" doubts did not shift the burden of proof or constitute misconduct). Moreover, these remarks occurred during a larger discussion of the reasonable doubt instruction, which is not challenged here because it properly

informed the jury of the law. Therefore, we discern no error, let alone plain error, in these statements and conclude they did not trivialize the burden of proof.

## V. Cumulative Error

¶ 38 Freyta-Duran last contends that the alleged errors, when taken together, show that she did not receive a fair trial.

¶ 39 The cumulative error doctrine applies when "the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process." *Howard-Walker v. People*, 2019 CO 69, ¶ 24 (quoting *People v. Lucero*, 615 P.2d 660, 666 (Colo. 1980)).

¶ 40 However, because we have found no errors, we necessarily conclude the cumulative error doctrine does not apply. *See People v. Villa*, 240 P.3d 343, 359 (Colo. App. 2009) (cumulative error analysis is required only when multiple errors have been identified).

## VI. Disposition

¶ 41 The judgment is affirmed.

JUDGE SULLIVAN and JUSTICE MARTINEZ concur.